IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | § | Chapter 11 |
|---|---|---|
| | § | |
| THE IT GROUP, INC., *et al.*, | § | Case No. 02-10118 (MFW) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | **Objections Due: 3/1/02 @ 4:00 p.m.** |
| | § | **Hearing Date: 3/7/02 @4:00 p.m.** |
| | § | |

**RESPONSE OF THE SHAW GROUP, INC. TO MOTION OF NORTHROP GRUMMAN TECHNICAL SERVICES, INC. AND WACKENHUT SERVICES, INC. FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

The Shaw Group, Inc. ("Shaw") hereby responds to the motion (the "Motion") of Northrop Grumman Technical Services, Inc. ("Northrop") and Wackenhut Services, Inc. ("Wackenhut", and, together with Northrop, the "Movants") for an order granting relief from the automatic stay to allow the Movants to exercise their buyout rights under a limited liability company operating agreement (the "Agreement") to which IT Environmental and Facilities, Inc. ("ITEF") is a party. In support thereof, Shaw respectfully submits:

**GENERAL BACKGROUND**

1. On June 30, 1998, the Movants and ITEF formed Space Gateway Support, a Virginia general partnership (the "Partnership"), for the purpose of soliciting and performing federal contract number NAS10-990001 (the "Contract").

2. The Movants and ITEF were subsequently awarded the Contract, and entered into the Agreement for the purpose of merging the Partnership into a subsequently formed limited liability company formed under the laws of Delaware (the "LLC"). At all times since, the LLC has performed the Contract.

3. On January 16, 2002 (the "Petition Date"), The IT Group, Inc. and numerous affiliates thereof (including ITEF) (together, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code").

4. In the weeks leading up to the Petition Date, Shaw began negotiating with the Debtors to purchase substantially all of the Debtors' assets. Shaw has since provided debtor in possession financing to the Debtors, and entered into an asset purchase agreement with the Debtors for substantially all of the Debtors' assets.

5. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. A creditors' committee was appointed in the Debtors' cases by the United States Trustee on January 25, 2002.

7. No trustee or examiner has been appointed in any of the Debtors' cases.

## OPERATIVE PROVISIONS OF THE AGREEMENT

8. Section 4.10 of the Agreement sets forth the default provisions applicable to the LLC members. As stated in the Motion, section 4.10(a) includes as "events of default" the following occurrences: (a) a member's failure to make a capital contribution within seven working days of a request therefor; and (b) the filing of a voluntary petition for reorganization.

9. Upon the occurrence of an event of default, section 4.10(b) of the Agreement empowers the non-defaulting members to send a notice of default to the defaulting member.

10. According to section 4.10(c), the issuance of a notice of default gives rise to the

following consequences: (a) managers appointed by the defaulting member are not entitled to vote at meetings of the LLC's board of managers; and (b) upon delivery of a subscription notice within ten (10) days of the notice of default, the non-defaulting members may be entitled to force a sale of the defaulting member's interest in the LLC.

11. Section 4.10(d) provides that a defaulting member may have up to thirty (30) days to cure a noticed default.

12. Sections 10 and 11 of the Agreement deal with the sale of a member's interest in the LLC. Although the Agreement is somewhat ambiguous, sections 10 and 11 of the Agreement appear to give the Movants a right of first refusal should ITEF attempt to sells its interest in the LLC.

## NO CAUSE EXISTS FOR RELIEF FROM THE AUTOMATIC STAY

13. In the Motion, the Movants ask for relief from the automatic stay under section 362(d)(1). Section 362(d)(1) states that a court shall grant relief from the automatic stay to a party in interest "for *cause*, including lack of adequate protection of an interest in property of such party in interest."[1]

14. In this case, the Movants rely on the Third Circuit's decision in *In re West Electronics Inc.*[2] for the propositions that ITEF cannot assume or assign its interest in the LLC, and that, therefore, ITEF has no "cognizable interest" in the LLC. In turn, the Movants argue that this alleged lack of a cognizable interest constitutes "cause" for purposes of section 362(d)(1).

[1] 11 U.S.C. § 362(d)(1) (emphasis added).

[2] 852 F.2d 79, 83-84 (3d Cir.) (dealing with the proposed assumption and assignment of the debtor's contract with the federal government, despite a federal statute prohibiting such assignments).

15. Shaw contends that the application of *In re West Electronics* for the proposition that there is cause to lift the automatic stay, while intriguing, is inappropriate in this case. More specifically, Shaw contends the Debtors do, in fact, have a cognizable interest in the LLC.

16. In *In re West Electronics*, the issue before the court was whether the debtor's contract with the federal government could be assumed and then assigned to a third party.[3] Applying a literal reading of section 365(c), the court found that a federal anti-assignment statute[4] prevented the debtors from either assuming or assigning the contract. After finding the debtor could not assume or assign its contract with the federal government, the court stated that the debtor had no "legally cognizable interest" in the contract. Accordingly, the court ordered that the automatic stay be lifted, and the federal government be allowed to cancel the contract with the debtor.

17. Without questioning the holding of *In re West Electronics*, Shaw believes the Movants' reliance thereon is misplaced.[5] In this case, the Debtors are not confined to assuming or assigning an executory contract. Rather, at issue here is the disposition of estate property, namely ITEF's interest in the LLC.

18. Section 541(a) of the Bankruptcy Code determines which property becomes part of a debtor's bankruptcy estate. With certain exceptions not applicable here, section 541(a)(1) pulls into the estate "all legal or equitable interests of the debtor in property as of the commencement of the case."[6]

---

[3] Id. at 81.

[4] 41 U.S.C. §15.

[5] Shaw reserves the right to otherwise challenge the application of *In re West Electronics* to the situation at hand.

[6] 11 U.S.C. 541(a)(1).

19. Of particular importance to the instant case, section 541(c)(1) provides that an interest of the debtor in property becomes part of the debtor's estate, ***notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law***: (a) that restricts or conditions transfer of such an interest by the debtor; or (b) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under the Bankruptcy Code, or on the appointment of or taking possession by a trustee in a case under the Bankruptcy Code or a custodian before such commencement and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in such property.[7] Accordingly, ITEF's interest in the LLC becomes property of ITEF's estate despite the Agreement's restrictions on transfer and restrictions on ITEF's ability to seek protection under the Bankruptcy Code.

20. Indeed, the Motion itself refers to 6 Del. C. § 18-701, which states that a limited liability company interest is personal property. Moreover, the stated purpose of the relief sought in the Motion is to allow the Movants to swoop in and force a sale of ITEF's interest in the LLC. Each of the foregoing factors indicates the Movant's recognize that the LLC interest is property of ITEF's estate. For the Movants to now argue ITEF has no cognizable interest in the LLC is disingenuous at best.

21. Section 541 of the Bankruptcy Code provides that ITEF's interest in the LLC is property of ITEF's estate, notwithstanding contractual provision or the Movants' protestations to the contrary. The Movants themselves have implicitly admitted that ITEF has a cognizable interest in the LLC. As a result of the foregoing, the "cause" cited by the Movants' in the Motion (i.e. lack of a cognizable interest in the LLC) fails. Accordingly, Shaw requests the Court deny

---

[7] 11 U.S.C. §541(c)(1).

the Movants' request to lift the automatic stay.

## THE MOVANTS' ACTIONS VIOLATED THE AUTOMATIC STAY

22. Section 362(a) of the Bankruptcy Code provides for an "automatic stay" upon the filing of a petition for relief under chapter 11 of the Bankruptcy Code. This automatic stay is broad in scope, and provides the debtor a "breathing spell" by halting the collection efforts of creditors.[8] In effect, the automatic stay serves to protect the debtor from the predatory actions of overzealous creditors during the period immediately following the filing of a petition for relief.

23. Included in the activities prohibited by the automatic stay are: (a) acts to obtain possession of property of the estate from the estate or to exercise control over property of the estate; and (b) acts to collect, assess, or recover a claim against the debtor that arose before the commencement of the debtor's chapter 11 case.[9]

24. On January 18, 2002, a date two days after the Petition Date, Northrop transmitted to ITEF a letter declaring ITEF to be in default of the Agreement as a result of ITEF's bankruptcy and ITEF's failure to meet a prepetition request for a capital contribution in the amount of $744,156.62. On January 25, 2002, Northrop transmitted a second letter to ITEF. In this second letter, Northrop indicated its intent to force a sale of a portion of ITEF's interest in the LLC.

25. On January 22, 2002, Wackenhut transmitted to ITEF a letter indicating Wakenhut's intent to force a sale of a portion of ITEF's interest in the LLC.

26. The January 18, 2002 letter from Northrop to ITEF was an act by Northrop to collect on a prepetition claim against ITEF. The January 22, 2002 letter from Wackenhut to

---

8 McCartney v. Integra Nat'l Bank North, 106 F.3d 506, 512 (3d Cir. 1997).

9 11 U.S.C. §§ 362(a)(3) & (6).

ITEF was an act by Wackenhut to obtain possession of property of ITEF's estate. The January 25, 2002 letter from Northrop to ITEF was an act by Northrop to obtain possession of property of ITEF's estate. Each of the aforementioned letters was a violation of the automatic stay.

## THE MOVANTS' ACTIONS ARE VOID *AB INITIO*

27. As a general rule, acts taken in violation of the section 362 automatic stay are void *ab initio.*[10] Some courts have recognized a narrow exception to this general rule in situations where a party seeks and is granted relief from the automatic stay under section 362(d) of the Bankruptcy Code.[11] In such a case, the offending action may be considered voidable instead of void *ab initio.*[12]

28. As set forth above, the Movants' requested relief from the automatic stay under section 362(d) is not appropriate. Accordingly, Shaw requests the actions taken in violation of the automatic stay be deemed void *ab initio.*

## ITEF IS ENTITLED TO ADDITIONAL TIME TO CURE DEFAULTS

29. As the default notice and LLC-interest subscription notices were sent by the Movants in violation of the automatic stay and, as discussed above, should be deemed void *ab initio*, Shaw asks the Court find these notices to be ineffectual for their respective stated purposes. Concomitantly, Shaw contends that ITEF has not yet formally received the notice of default or subscription notices required by the Agreement. Additionally, section 362 prohibits the Movants from sending such notices until the Movants request and receive relief from the

---

10 *In re* Siciliano, 13 F.3d 748, 750 (3d Cir. 1994); Raymark Industries, Inc. v. Lai, 973 F.2d 1125, 1132 (3d Cir. 1992); Maritime Electric Co. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991); *In re* Ward, 837 F.2d 124, 126 (3d Cir. 1988).

11 *See e.g. In re* Siciliano, 13 F.3d at 751.

12 Id.

automatic stay. Further, until the Movants obtain the Court's permission to commence these collection and foreclosure efforts, the cure provisions, and associated cure periods, in section 4.10 of the Agreement are not implicated.

30. Moreover, section 108 of the Bankruptcy Code contemplates an automatic extension of the period within which certain acts must be completed or defaults must be cured. In particular, section 108(b) provides:

> . . .if. . .an agreement fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, or cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.[13]

31. Under the Agreement, members were to have seven (7) working days from the date of a request for a capital contribution to make such contribution. Upon a failure to make the requested capital contribution, section 4.10(d) allowed ITEF ten (10) days to cure the resulting default. On Friday January 4, 2002, ITEF received a request for a capital contribution. According to the Agreement, ITEF had until January 15, 2002, a date seven working days after the request, to remit the requested capital contribution. Further, upon ITEF's failure to make the requested capital contribution by January 15, 2002, section 4.10(d) allowed ITEF until January 25, 2002 to cure the resulting default. On January 16, 2002, ITEF and the other Debtors filed their petitions for relief.

---

[13] 11 U.S.C. 108(b).

32. Because the Petition Date occurred before the expiration of the period within which ITEF was allowed to remit the requested capital contribution, ITEF is entitled to an extension of the period within which it may cure defaults under the Agreement until the later of: (a) 60 days after the Petition Date (i.e. March 17, 2002); or (b) the end of the cure period set forth in section 4.10 of the Agreement, with such cure period commencing upon the Movants' transmission of the requisite notices after obtaining relief from the automatic stay.

## CONCLUSION

33. The Movants' request to lift the automatic stay and force a sale of ITEF's interest in the LLC is premature. It is critical at this juncture of the Debtors' chapter 11 cases that they be allowed the respite contemplated by section 362. Accordingly, Shaw asks that the Court: (a) deny the Movants' motion to lift the automatic stay; (b) deem the Movants' preexisting violations of the automatic stay to be void *ab initio*; (c) allow ITEF the statutorily provided extension of the period within which it may cure defaults under the LLC; and (d) grant such other and further relief to which ITEF and the Debtors may be entitled.

Dated: March 4, 2002

ASHBY & GEDDES, P.A.

Christopher S. Sontchi (I.D. #3159)
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888 (telephone)
(302) 654-2067 (facsimile)

-and-

Jeremy B. Coffey
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone: (214) 698-3100
Telecopy: (214) 698-3400

ATTORNEYS FOR THE SHAW GROUP, INC.

**CERTIFICATE OF SERVICE**

I, Christopher S. Sontchi, Esquire hereby certify that on the 4th day of March, 2002, I caused a true and correct copy of the attached document to be served upon the parties listed below in the manner so indicated.

**BY HAND DELIVERY**

Laurie Selber Silverstein, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, DE 19899
*Counsel to Northrop Grumman Technical Services, Inc. and Wackenhut Services, Inc.*

Jeffrey M. Schlerf, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
*Counsel to the Official Committee of Unsecured Creditors*

Gregg M. Galardi, Esquire
Marion Quirk, Esquire
Skadden Arps Slate Meagher & Flom
One Rodney Square
Wilmington, DE 19899
*Debtors' Counsel*

Mark S. Kenney, Esquire
Office of the United States Trustee
844 King Street, Suite 2313
Wilmington, DE 19801

**FEDERAL EXPRESS**

David S. Kurtz, Esquire
Timothy R. Pohl, Esquire
Chris L. Dickerson, Esquire
Skadden Arps Slate Meagher & Flom
333 West Wacker Street
Chicago, IL 60606-1285
*Debtors' Counsel*

Buckmaster De Wolf, Esquire
Howrey Simon Arnold & White, LLP
301 Ravenswood Avenue
Menlo Park, CA 94025
*Counsel to Northrop Grumman Technical Services, Inc. and Wackenhut Services, Inc.*

Christopher S. Sontchi